[No. 4681. Decided October 2, 1903.]

BLANCH C. TURNER, *Appellant*, v. W. W. D. TURNER et al., *Respondents*.[1]

JUDGMENT—VALIDITY—UNAUTHORIZED APPEARANCE OF ATTORNEY—NATURE OF PROOF. A judgment entered upon the appearance of an attorney without service of process will be set aside on account of the attorney's want of authority only upon clear and convincing proof that the appearance was unauthorized.

PLEADINGS—DENIAL—SUFFICIENCY—AMENDMENT PRESUMED. An answer stating that truthful and untruthful declarations are so intermingled that it is impossible to segregate the allegations and that therefore defendant denies each and every part thereof is not bad as an admission, and may be considered as amended when objected to for the first time in the supreme court.

JUDGMENT—ACTION TO SET ASIDE—AUTHORITY OF ATTORNEY TO APPEAR—EVIDENCE—SUFFICIENCY. A judgment of divorce entered upon the appearance of an attorney for the wife should not be set aside upon the testimony of the wife that the appearance was not authorized, where the attorney was her general counsel, and it appears from his lettters that he sent her a copy of the summons and complaint shortly after service with the answer thereto, notified her of the decree immediately, advised her of its effect, and she recognized the divorce and expressed gratification thereat, and where the husband and his attorney testify that before suit she instructed service to be made upon such attorney.

HUSBAND AND WIFE—DIVISION OF COMMUNITY PROPERTY BY CONSENT—ACTION TO SET ASIDE—SUFFICIENCY OF EVIDENCE. In an action by a divorced wife for a division of community property, a finding that the same was fairly divided by mutual consent before the decree, is supported by evidence of the husband that she received property of the value of $192,000, while he received but $171,000, although the wife testifies that she received the above as gifts and claims half of the balance, and that the husband received $37,000 more than she received.

Appeal from a judgment of the superior court for Spokane county, Belt, J., entered October 20, 1902, upon findings in favor of the defendant, dismissing plaintiff's com-

[1]Reported in 74 Pac. 55.

plaint on the merits, after a trial before the court without a jury. Affirmed.

*S. G. Allen, James Dawson,* and *L. G. Nash,* for appellant.

*W. H. Plummer,* for respondent.

FULLERTON, C. J.—The appellant instituted this action primarily to set aside and annul a decree of divorce entered by the superior court of Spokane county on the 15th day of August, 1899, in an action therein pending, brought by the respondent against the appellant; and, secondarily, to secure a division of the community property owned by the parties at the time the decree was granted, in case the same be not set aside.

In her complaint the appellant alleges, among other things, that she and the respondent intermarried in the year 1877; that they lived together as husband and wife from that time until about the month of November, 1897, the principal part of the time in the city of Spokane; that on the date last named the respondent, for the purpose of fraudulently and secretly obtaining a divorce from her, induced her to leave Spokane, and go to the city of Mobile, in the state of Alabama, and there take up her residence, promising that he would follow her as soon as his business affairs in Washington could be settled, when they would again live together as husband and wife; that she believed his representations; and, believing them, did go to Mobile, Alabama, and establish a residence, but that the respondent did not follow her as he had promised; that she thereupon returned to Spokane for the purpose of living in that city with respondent, but that he refused to see her or permit her to come to his apartments, and that, after repeated

rebuffs from respondent, she returned to Mobile; that thereafter, and on the 1st day of August, 1899, the respondent began an action against her for a divorce, alleging in his complaint that she had abandoned him without cause and against his will, and continually asserted that she would no longer live with him; that no process was sued out or served on her in the action, but that the respondent, as a part of his fraudulent scheme, hired an attorney to pretend to represent her in the action, and that the attorney did file an answer therein, verified by himself as her attorney, purporting to admit certain allegations of the complaint and deny certain others; that afterwards a stipulation was entered into by the attorney pretending to represent her, and the attorney representing respondent, agreeing to the appointment of one John M. Gleeson as judge *pro tempore* to try the cause, and that Gleeson was appointed in pursuance thereof; that he afterwards heard the cause, and rendered the decree of which she complains; that the fees of the attorney pretending to represent her, as well as the costs of court taxable against her, were paid by the respondent—all of which, she avers, was done without her knowledge or consent, and in pursuance of the fraudulent scheme of the respondent to procure a divorce from her, and that she was kept in absolute ignorance of the proceedings until long after the same were consummated. It is then alleged that the parties own community property to the value of $250,000, all of which is in the possession of the respondent. The prayer is in the alternative, asking for an annulment of the divorce decree, and, if that be denied, a division of the community property.

The answer put in issue the allegations of the complaint going to the appellant's right of recovery, and set out five separate defenses, one of which was to the effect that the

community property of the parties had been divided long prior to the divorce by their mutual consent.

The trial court found the issues of fact in favor of the respondent, and held that the decree of divorce was a valid decree, that the community property of the parties had been divided by their mutual consent, and entered a judgment accordingly.

The evidence was mainly directed to the two principal questions suggested in the complaint; namely, was the appearance of the attorney who purported to act for the appellant in the divorce action authorized by her, and was there a mutual division of the community property? But before passing to a review of these questions, it is well to notice the objection of the respondent to the effect that this action cannot be maintained. He argues that a judgment entered on the unauthorized appearance of an attorney is only voidable, and hence the appellant must show, among other things, diligence in commencing her action to set the judgment aside before she is entitled to be heard, and that so far from exercising diligence in that regard she has been guilty of gross laches. But whatever may be the rule elsewhere, it is the settled doctrine in this state that a judgment entered upon the unauthorized appearance of an attorney, where no original process has been issued and served, is void, and can be set aside at the instance of the judgment debtor in an action instituted for that purpose, whether innocent third persons may suffer thereby or not. *McEachern v. Brackett*, 8 Wash. 652, 36 Pac. 690, 40 Am. St. 922; *Ashcraft v. Powers*, 22 Wash. 440, 61 Pac. 161. A judgment entered on the appearance of an attorney without the service of original process, however, is presumed to be valid, and will be set aside only upon clear and convincing proof that the appear-

ance by the attorney was unauthorized. Cases *supra*. It cannot be set aside by showing that the evidence on which it was granted did not justify granting it, or that the evidence was false in fact and known to be so by the party obtaining the judgment; for these matters were at issue in the original case, and the judgment concludes any after inquiry into them.

On the question of authorization, it is first argued that the answer, purporting to put in issue the allegation of the complaint to the effect that the appearance was unauthorized, raises no issue, and is an admission of truth of the matters attempted to be denied. The part of the answer thought to work this result is as follows:

"Defendant . . . admits paragraph 5 down to and including the words, 'which complaint was duly verified, and filed in this court on the 13th day of August, 1899', . . . and defendant alleges that the remaining part of said paragraph is so intermingled with truthful and untruthful declarations that it is impossible to further segregate said allegations, and therefore defendant denies each and every part of said paragraph, excepting that which is heretofore admitted to be true."

It may be that this part of the answer was subject to successful attack in the court below by motion in some form, but, whether this be true or not, it is certainly not an admission of the allegations which it purports to deny. On the contrary, it is a positive denial of all the allegations of fact contained in the paragraph named not expressly admitted, and it is too late to complain for the first time in this court that the denial is not in accord with the rules of good pleading. Where a pleading is treated by the parties in the court below as sufficient, and the cause is tried in that court as if upon sufficient pleading, this court will treat it as sufficient on the appeal of

either party, unless, of course, it discloses an action without the jurisdiction of the trial court, or fails to state a cause of action or defense.   Moreover, the defect here complained of is one that could have been cured by amendment; and in such a case, where the objection is raised here for the first time, this court is required by statute to treat the pleading as amended.

Turning to the evidence, the appellant testified in her examination in chief, and every time the question was asked her directly on her cross-examination, that the attorney's appearance for her in the divorce action was unauthorized.   She admitted that he held a retainer from her, and was looking after her legal business in Spokane, and that she had consulted with him concerning the probabilities of such a suit, but she is positive in her assertion that she never authorized him to appear in the proceeding or waive the service of process upon her.   There are circumstances shown by the record, however, which appear to put her memory at fault.

The attorney who purported to represent her was an able and distinguished lawyer, who had enjoyed a large and varied practice, and who knew well the effect upon the judgment had his appearance in the proceedings not been authorized.   He died just prior to the trial, and we have not the benefit of his testimony, but his letters to the appellant, written just before and just after the decree, are in the record.   These, while advising the appellant as to the status and effect of the decree and her rights thereunder, make no mention of its possible illegality, nor is it otherwise even remotely suggested that he had appeared without her express authorization.   In this connection it may be well to add there was no proof of the allegation that his fees had been paid by the respondent.   The only

foundation for that charge was that he had, in the name of the appellant, after the service of the summons and complaint upon him, applied to the court and obtained the usual order for suit money, which the respondent paid into court pursuant to the order.

Again, the appellant is not very happy in her memory concerning many of the details of the transaction. She testified, that she knew nothing of the pendency of the action until she saw it published in a Spokane paper that a decree had been rendered therein; that she did not know that the attorney had assumed to appear for her until long after she had knowledge of the rendition of the decree; and that she had never acquiesced or thought of acquiescing in the decree. The letters of the attorney, however, introduced by her, show that he enclosed her a copy of the complaint and his answer thereto shortly after the service of the complaint on him, and prior to the entry of the decree, and that immediately on the entry of the decree he notified her of the fact. In each of these letters it was made clearly to appear that the attorney had purported to represent her in the proceedings. Her answers to these letters shows that she could not have been misled as to this fact. In one of them written under date of the 28th of August, 1899, thirteen days after the date of the decree, she expresses her gratification at the result; and a year later she again wrote the attorney, saying that she had just been reading over his letters, and asks certain questions concerning the status of the property owned by them at the time of the divorce, in which she uses the phrase "our divorce," in referring to the decree she now seeks to set aside. In this letter, although she must again have had her memory refreshed on the matter of the appearance by the attorney, she makes no mention of the fact that his appearance was unauthorized.

In the light of these facts, it would seem that it was almost too much to say that it appeared by a preponderance of the evidence that the appearance of the attorney was unauthorized; yet, in addition to this, there is the positive evidence of the respondent, as well as that of his attorney, to the effect that she told them while in Spokane, a few months before the divorce action was commenced, and at a time when the matter was talked over, that this particular attorney was in her employ, and that any service of papers they desired to make in the divorce action could be served on him. We conclude, therefore, that there is in the record no sufficient evidence to justify vacating the divorce decree.

On the second question, whether or not there is any community property subject to division, we think the weight of the evidence is with the finding of the trial court. The respondent testified that the property was all divided, the appellant receiving money and property aggregating $192,000, while he received but $171,000 as his proportion of the common property. The appellant does not seriously dispute receiving property to the value mentioned, but seems to contend that it came to her as gifts from her husband, and that she is not only entitled to that, but to a one-half of that taken by her husband in addition. But we cannot think this the intention of either of the parties at the time the divisions were made. It was clearly their purpose to make a division so that each might hold his or her portion as separate property. It is argued further, however, that the appellant never received her just share of the community property; that, while the respondent testified that she received $192,000 as against $171,000 awarded to him, when he undertakes to list the properties each received in detail he shows that the value

of the portion received by him equals $229,800, or $37,800 more than the appellant received.    We have carefully read the evidence on this point, and, while it is not to our minds as clear as it could have been made, we think it supports the judgment of the trial court rather than the conclusion the appellant draws from it.

These conclusions require an affirmance of the judgment appealed from, and it is so ordered.

HADLEY, MOUNT, DUNBAR, and ANDERS, JJ., concur.